OPINION
Defendant-appellant Jermaine Bounds appeals his conviction and sentence in the Richland County Court of Common Pleas on one count of aiding and abetting aggravated robbery with a gun specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In September, 1995, the Richland County Grand Jury indicted appellant on the aforementioned offense and accompanying specification in connection with an armed robbery which occurred at the Ritz Nite Club in Mansfield, Ohio, on August 31, 1995.
On June 23, 1996, appellant was arrested in California. After waiving extradition proceedings, appellant remained in jail in California until he was returned to Richland County on July 22, 1996. At his arraignment on July 30, 1996, appellant entered a plea of not guilty.
The trial court originally scheduled the matter for trial on September 26, 1996. On September 26, 1996, the trial court continued the trial until October 3, 1996. The order of trial continuance stated the reason for the rescheduling was due to the fact the case of State v. Grier, Richland Case No. 96CR224AD, had proceeded to trial. Thereafter, on October 1, 1996, the trial court continued the matter from October 3, 1996 until October 10, 1996, due to the unavailability of defense counsel. On October 10, 1996, the trial court again continued the case until November 21, 1996, because the case of State v. Byrd, Richland Case No. 96CR92D, had proceeded to trial. Because appellant's trial counsel had a seminar on November 21, 1996, the trial court reset the matter for October 31, 1996. The three (3) orders of continuance were filed before the expiration of time to bring appellant to trial.
Prior to opening statements on October 31, 1996, the trial court entered into the record its rulings on three motions made by appellant. First, the trial court overruled appellant's motion to dismiss based upon an alleged violation of his speedy trial rights which was filed on October 29, 1996. The trial court found the delay in bringing the matter to trial was reasonable based upon the court's own docket. Next, the trial court sustained appellant's motion to exclude the testimony of Yolanda Alverez finding the State had failed to disclose the witness prior to the discovery cut-off date of September 17, 1996. Lastly, the trial court overruled appellant's motion to exclude the testimony of Deborah Brock Pounds regarding a statement made by Charles Pounds, a co-defendant in this matter, to appellant and appellant's response thereto. The trial court found the testimony fell within the hearsay exception of Evid. R. 801(D)(2)(b)(e) as an adoptive admission. At trial, the following testimony was presented.
Robert Koser, the manager of the Ritz Nite Club, testified, on the day of the incident, he and his wife, Carol, were working when three masked men entered the Club, pointed a gun to his head, and robbed the establishment. Koser described the perpetrators as black males, one approximately 5'8" to 5'9", and the others approximately 6' to 6'1". Koser further testified he knew one of the individuals as "Pound"; this individual came into the Club on a regular basis. Carol Koser also testified. She described the three perpetrators as black males in their twenties, with medium builds.
Shawn Pointer, the third co-defendant in the matter, testified as part of a plea agreement with the State, in which Pointer pled guilty to robbery and received a three to fifteen year sentence. Pointer originally was charged with aggravated robbery with a gun specification which would have carried an eight to fifteen year sentence. In exchange for the lesser sentence, Pointer agreed to testify truthfully against appellant and co-defendant, Charles Pounds.
During his testimony, Pointer stated that about one week before the robbery, appellant had mentioned his desire to rob the Club. On the morning of August 31, 1995, appellant arrived at Pointer's home and the two drove around the area. Eventually, the two met Charles Pounds, whom Pointer had never met before, but whom appellant knew. Pointer explained Pounds had the guns necessary for the commission of the crime. Pointer volunteered to provide his vehicle because appellant and Pounds did not have one. When Pounds entered the vehicle, he handed one of his two guns to appellant and he retained the other weapon.
After circling the Club a couple of times, Pointer parked the vehicle in an alley. While appellant and Pounds walked toward the Club, Pointer waited in the car. Several minutes later, appellant and Pounds returned and informed Pointer that they needed him because there were too many patrons in the bar. After placing a stocking cap over his head, Pointer took the gun from appellant. The three entered the establishment through the backdoor. Pointer instructed the occupants to remain still. Appellant jumped over the bar and grabbed the money.
Thereafter, the three ran to Pointer's vehicle and drove away. After driving for a short period, Pounds instructed Pointer to stop the car behind an abandoned house. The three exited the vehicle and began to divide the money. Before they finished counting the money, Pounds hid the money in the abandoned house. As he returned to his car, Pointer observed a police car heading down an alley in the direction from which they had just traveled. Pointer began to run, but was soon apprehended.
Mansfield Police Officer Lucinda Powers testified that she responded to a tone alert and discovered the robbery at the Ritz Nite Club. She assisted in the apprehension of Pointer. After his arrest, Pointer agreed to talk to Officer Powers. The two were acquainted from a prior incident in which Pointer was the victim of an assault. During his first meeting with the officer, Pointer cried as he admitted his participation in the robbery. Powers testified Pointer reluctantly revealed the involvement of appellant with whom he was very close. During a second meeting with Pointer, the officer presented two photo arrays to see if he could identify the third individual involved in the robbery. From the second photo array, Pointer identified Charles Pounds.
After hearing all the evidence and deliberations, the jury found appellant guilty of aiding and abetting aggravated robbery with a gun specification. The trial court sentenced appellant to eight to twenty-five years on the aiding and abetting charge and three years on the gun specification. The trial court further ordered the sentences to be served consecutively.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. THE COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE MOTION TO DISMISS PURSUANT TO O.R.C. 2945.71 FILED BY THE DEFENDANT.
 II. THE COURT COMMITTED PREJUDICIAL ERROR WHEN IT ALLOWED DEBORAH BROCK POUNDS TO TESTIFY REGARDING A HERESAY [SIC] STATEMENT WHICH THE COURT DEEMED AN ADOPTIVE ADMISSION OF THE DEFENDANT.
 III. THE COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO PROPERLY INSTRUCT THE JURY REGARDING AN ACCOMPLICE'S TESTIMONY.
 I
In his first assignment of error, appellant contends the trial court erred in overruling his motion to dismiss pursuant to R.C. 2945.71.
In State v. Mincy (1982), 2 Ohio St.3d 6, syllabus, the Supreme Court held:
 When sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial.
Appellant was arrested in California on a fugitive warrant on June 23, 1996. After waiving extradition proceedings, he remained in jail in California until he was returned to Richland County on July 22, 1996. Appellant was held in the Richland County Jail until his trial on October 31, 1996. The original trial date was September 26, 1996. On the day of trial, the trial court continued the matter until October 3, 1996. The trial court entered this continuance on the journal prior to the expiration of the time limit for bringing appellant to trial. The court's order also sets forth the reason for the continuance, i.e., another criminal case had proceeded to trial.
On October 1, 1996, the trial court continued the trial from October 3, 1996, until October 10, 1996, due to the unavailability of appellant's trial counsel. Thereafter, on October 10, 1996, the trial court again continued the matter until November 21, 1996. This order was journalized prior to the expiration of the time limit for bringing appellant to trial. The reason for this continuance was that another criminal matter had proceeded to trial. Due to appellant's trial counsel's unavailability on November 21, 1996, the trial court moved the trial date forward to October 31, 1996.
We find the trial court's entries meet the requirements ofMincy, supra. First, both the September 26, 1996 order and October 10, 1996 order were journalized prior to the expiration of the time limits prescribed in R.C. 2945.71 for bringing appellant to trial. Additionally, these orders state the reasons justifying the sua sponte continuances. Specifically, the continuances were necessitated by the court's own docket. Furthermore, we find the continuances reasonable pursuant to R.C. 2945.72(H).
At oral argument, appellant asserted his case was older than the two criminal matters for which the trial court twice continued the trial in the instant action. Although the case numbers would suggest appellant's case was older than the two cases which proceeded to trial prior to his case being heard, we cannot presume the trial court's decision to hear those cases was unreasonable. The record does not demonstrate which case had been pending longer. Additionally, because appellant was not arrested in California until late June, 1996, we cannot presume that the defendants in the other cases were served with their complaints after appellant herein was served with the instant complaint.
Based upon the foregoing reasons, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in allowing Deborah Brock Pounds to testify regarding a statement which she overheard Charles Pounds make to appellant, and appellant's response thereto. Specifically, appellant asserts the trial court improperly deemed his response to Charles Pounds' statement as an adoptive admission.
"The omission or exclusion of relevant evidence rests with the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, 180. Accordingly, the applicable standard of review is abuse of discretion. In order find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
Pursuant to Evid. R. 801(D)(2)(b), "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement of which he has manifested his adoption or belief in its truth." "An adoptive admission consists of a statement by a non-party which may be deemed to be that of a party by virtue of the failure of the party to deny the statement where a reasonable person would have done so." State v. Porter (Mar. 11, 1982), Cuyahoga App. No. 43825, unreported (Citation omitted).
At trial, Deborah Brock Pounds testified as follows:
 THE WITNESS: Okay. We were standing there all talking, and [Charles Pounds] started joking. And he was like — they were talking about the robbery, like I said, he goes, Oh, he's like, don't even try, he said you know you were there, too, Jermaine. And they were joking. And he just started laughing.
BY MR. ROBINSON [PROSECUTOR]:
Q. Jermaine?
 A. Yeah, and Jermaine just laughed. And then I started talking to him again.
 Q. So let me get this straight. You heard Charles Pound say to Jermaine, Oh, don't give me that, you know you were there.
 A. Oh, don't try, you know you were there. Just joking around.
Q. Then Jermaine — —
 A. He just laughed. And then he and I started talking.
Q. Jermaine didn't deny it at that time?
A. No. He didn't say he did it either.
Q. He just laughed.
A. Right.
* * *
Transcript of the Proceedings, pp. 80-81.
In the presence of appellant, Charles Pounds implicated appellant in the robbery of the Ritz Nite Club. Rather than deny his involvement, appellant merely laughed at the remarks. Arguably, a reasonable person would have denied the statement and by virtue of appellant's failure to do so, he is deemed to have adopted Pounds' statement. Thus, the trial court did not abuse its discretion in allowing Deborah Brock Pounds' testimony regarding Pounds' statement and appellant's response.
In his Brief to this Court, appellant submits, since Deborah Brock Pounds testified she did not know whether or not Charles Pounds was serious or merely joking, she could not accurately convey appellant's understanding of the nature of the remarks. Although a trial court makes the ultimate decision of whether or not to admit evidence, the weight to be given that evidence remains within the province of the jury. Accordingly, the jury's job was to assess Deborah Brock Pounds' testimony and weigh such testimony in relation to all the evidence in the case.
Appellant's second assignment of error is overruled.
 III
In his final assignment of error, appellant argues the trial court committed plain error in its instruction to the jury concerning the evaluation of accomplice testimony.
The trial court instructed the jury as follows:
 You folks are the sole judges of the facts, and the weight to be given to the evidence. In weighing the evidence you must consider the credibility of the witnesses. You should use the tests of truthfulness that you're accustomed to using in your daily lives. These tests include the appearance of each witness on the stand, the witness's manner of testifying, the reasonableness of that testimony, the opportunity that witness had to see, hear and know the things concerning which she or he testified. The witness's accuracy of memory, frankness or lack of it, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony. You should use these tests to give to each witness's testimony such weight as you think proper.
 You're not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony any of witness. It is your duty to determine what testimony to believe or what testimony not to believe.
 You've heard the testimony from Shawn Pointer, another person who had pled guilty to the same crime charged int his case and is said to be an accomplice. An accomplice is one who knowingly assists another in the commission of a crime. Whether Mr. Pointer was an accomplice and the weight to be given to his testimony, are matters for you to determine. Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution.
Tr. at 173-174.
Appellant concedes because he failed to object to the instruction, this Court must find plain error in order to reverse.
R.C. 2923.03(D) provides:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you form the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
We begin by noting the trial court's instruction on this issue followed, verbatim, the recommended alternative instruction on accomplice testimony set forth in 4 OJI 405.41. The trial court omitted the portion of R.C. 2923.03(D) which provides "[t]he testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest." However, the trial court did instruct the jury that it should view Pointer's testimony with grave suspicion, and weigh it with great caution. Although the better practice would be to give the entire instruction as set forth in the statute, we do not find error, let alone plain error, in the trial court's omission of the language regarding an accomplice's complicity, moral turpitude, or self-interest. As the Second District Court of Appeals stated inState v. McCoy (Feb. 2, 1994), Clark App. No. 3033, unreported:
 The essence of the . . . admonition [of R.C. 2923.03(D)] is that in determining credibility, the jury should view accomplice testimony with great caution because of the motive for falsification which may be present in such testimony. While it is evident that the trial court did not recite the specific admonition of R.C. 2923.02(D) [sic], reviewing the court's charge in its entirety we conclude that the essence of the admonition contained in R.C. 2923.02(D) [sic] was substantially concluded in the court's instruction.
After examining the record in the case sub judice, we cannot conclude that but for the failure of the trial court to strictly comply with the jury instruction regarding the evaluation of accomplice testimony, the outcome of this trial would have been otherwise.
The third assignment of error is overruled.
The judgment of Richland County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Reader, J. and Wise, J. concur
 JUDGMENT ENTRY
CASE NO. 96-CA-104
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.